The clerk, please call the next case. 4-16-0-3-8-6, Caterpillar, Inc. v. Workers' Compensation Comm'n. May it please the court, Mark Flannery for the appellant Caterpillar, Inc. counsel. And your Honor, and to the honorable panel, we would submit that the original decision of the Commission in this case was substantially supported by the evidence, that it was not against the manifest way to the evidence, and that it was grounded soundly in issues of fact, and more specifically, credibility. That's very clear, I think, from reading first of all Arbitrator Andros' decision. So in the original decision, the Commission found the claimant did not sustain an injury, did not carry the burden to prove that an injury was sustained at the workplace, correct? Correct, Your Honor. Correct, Your Honor. And specifically, the Commission adopted the arbitrator's decision without further findings, and Can you highlight why that finding was correct? Certainly, Your Honor. First of all, there was substantial evidence regarding the credibility or lack of same of the petitioner, the defendant in this court. Again, as noted by the arbitrator, his statement close in time, when he came to report an accident, or an event actually, two days after the alleged event occurred, that he did not do anything that he knew of to hurt it. That was made to the nurse practitioner, Clayton, at the time he was first in the medical department. Inconsistent with what Dr. Kornblatt said regarding what happens when you have a bucket handle meniscus tear, he told the first nurse he saw, Nurse Brown, that his knee popped a couple of times, didn't start hurting right away. His actual incident report, which he filled out, indicated, I was working just that, I was working in op two, and my knee popped a couple of times. Now, in looking at the sum total of this evidence, not only are there specific inconsistencies, as the arbitrator noted, but beyond that, appellant would point to the Ville case, which we cited in our reply brief. The Ville case involved a lady who claimed that she was injured in a parking lot, and the person indicated that she fell, and that was in the emergency room records, and that was what she first said to her supervisor. She did not describe, however, at the time of these close-in-time events to what is supposedly what occurred, that she had tripped in a crack, and that's what had happened. So we would draw a parallel to this case, as we noted in our brief, Your Honor, where throughout all these different histories, he says his knee popped at times, says at one point that he didn't do anything that he knew of to hurt it, and throughout all of this, what you don't get is the very detailed, very lengthy, very, if you will, laborious even description and arbitration of how it is that he was positioned in a certain way on the frame of the vehicle, and he was standing up and twisted and pivoted and was standing up at the same time, and that was this point at which he heard the pop in his knee. Did the claimant at arbitration attempt to explain away these alleged inconsistencies at all? Well, with respect to the first statement to the outside provider, the nurse practitioner, the lace at his family physician, he simply denied that he made the statement. Now, in his brief, he attempts to offer various explanations as to why it is he made this statement or pointed... Well, that is in his brief. That's not evidence. I'm interested in what was testified to by the claimant in the attempt to clarify or explain the alleged inconsistencies. Well, at least, as I note, Your Honor, in some respects he attempted to, but obviously the arbitrator, who had an opportunity to listen to him testify, found those explanations to be unsatisfactory. The arbitrator was well taken, and the commission was well taken to adopt the arbitrator's statement. We would submit that he takes the statement, I don't know of anything that I did of to hurt this as it stands. I believe that's a quote of what he said in his decision, and quite frankly, we believe that he was well justified in doing so. The real question here, however, is whether or not there was sufficient evidence to meet the manifest weight standard that we're under here before this court. What about the buckle handle lateral miniscule tear? What is your argument on that? The commission obviously found it wasn't caused by work activities, right? Correct. Correct, Your Honor.  Well, simply that the commission found that the petitioner's account of how it is that he hurt himself on the frame was not credible, not sufficiently credible to meet the burden of proof. Did they articulate specifically why they came to that conclusion? Well, certainly. It's based on what I've cited here previously, the inconsistencies in what he said, Dr. Kornblatt's thoughts regarding the failure to record any specific history of the kind of twisting and rising up out of a squat maneuver that would be consistent with this type of tear. And again, it bears noting that while Dr. Schaap in the patient history form received, again, a history of a popping and he didn't necessarily receive any history regarding this twisting and squatting maneuver which would be necessary to cause this kind of tear. And as noted in our brief, Your Honor, this is a bucket handle meniscus tear. It's there. We don't have the burden to show why it's there. Right. And so, Your Honor, we believe that both on the issue of accident, also on the issue of causation, there was sufficient evidence here to support the arbitrator's decision, the commission's decision. It was not against the manifest way of the evidence. Substantial evidence existed to support it, and we would ask the court to reinstate the commission's original decision and find that that is worthy of the court's support. Thank you. Thank you, Counsel. You have time in reply. Counsel, you may respond. Thank you. Pleased to court. I'm Dennis Satterberry. I'm the attorney for the petitioner. The standard of the review, of course, is manifest way of the evidence, and the appropriate test is whether there's sufficient evidence in the record to support the commission's finding. This is a difficult standard to overcome, but it's not impossible. While technically not re-weighing the evidence, this court is making the determination, was there sufficient evidence in the record to support the commission's finding? In this case, there is not. Let's start out with the specific type of injury. This is a torn meniscus. It's not, a degenerative process. The knee was pristine except for this torn meniscus. It was an acute injury, which means it was a sudden injury, and it was so severe it was unrepairable. This is not disputed. The question is, if he's injured, the question is how and when did he injure it? The respondent, and they don't have a duty, but the respondent points to no date, no time, no incident that caused the accident. Then you have to look to what evidence was presented to those issues. The only evidence of that is brought by the petitioner. Petitioner says on March 9, 2011, he's on assembly line. If you can picture these big caterpillar trucks, he's on the assembly line where there's just a frame, it just has the His job as team lead is to step in if there's somebody who's absent. In this case, it was operator two. There's four people working on this truck. He's up, straddling, right leg, he testified right leg's on the motor and left leg is on, or could be vice versa, is on the metal, and he's put on a wiring harness, which is the bar that goes around because it's about waist high, and it goes underneath. So he has to go underneath to go around. Now, he's testifying to that, and there's operator number two who's, the operator number one who's down below, Mr. Etchison, he comes and testifies and says that that's exactly what's happening. Now, petitioner testified that when he was out there and he squatted, he kind of stood up and that's when his knee, he felt pain and popped. Both Dr. Etchison and Petitioners is caused by squatting and sitting. Here's the problem that we're sort of bouncing around, and this is your biggest challenge here, and I think you know it. That is the credibility of the claimant. By looking at the statements in the medical records, or as you phrase it, the lack thereof, the commission didn't believe the claimant. Let me ask you this, and this is one of the things they hung their head on. On March 11th, claimant told the advanced practice nurse for employer that he did not do anything that he knew of to hurt his knee. Did he make that statement? Is that what they said he said? That's what they're saying he said, but if you looked at the document, it was just quotes on a piece of paper, which to me was kind of odd. Why are you just putting quotes on a piece of paper? But secondly, I think that could be taken multiple ways, and how he tried to explain it was that he's talking to a company doctor or nurse. He's not trying to get in there and say, this is different than what he normally does. I think that's what he testified to. Yeah, but if this is a major traumatic injury, as you're alluding to, he doesn't have any idea how it happened? No, no. That's just the opposite. If you look at the incident report, which was done, he says on question number seven, I was on top of the truck when it popped and pained. Pop slash pain. That's on there. Why do you tell the advanced practice nurse he didn't know how he hurt it? That's also not true. I mean, I don't know where she came up with that evidence. But that's in the evidence, isn't it? It is, but it's a quote that was on a piece of paper. And you're talking about a third party who wasn't present, who's just writing quotes down. It could be a statement against admission. If it comes into evidence, he's going to argue it's a statement against interest. No, I agree, but look at the narrative in the nurse's notes as well, the written narrative. It says, the right knee popped a couple times on Wednesday while at work, but it didn't start hurting right away. States the pain was worse on Thursday and now having problems walking. States he was working on top of the truck when pain slash pop started. That's the same time. In the same conversation, he had both these things. Now, how can he be on top of the truck when he had pain and it popped, and now they're saying it didn't start right away. I think this is a third party writing down these statements, and I don't think it's true and accurate. His testimony, he turned out of his squat and kind of stood up, and that's when the leg popped, and you were demonstrating it. That's what he testified to. Is that statement supported anywhere in the medical records? Does that statement appear anywhere in any medical records regarding the mechanism of injury? It is. Can I explain it please? In Dr. Schott's records, Dr. Schott specifically says that he was based upon the history. This is what Dr. Schott says. Based upon the history, mechanism of injury, and findings of surgery, it is very reasonable to conclude that it was the event on March 9th on top of the truck, which was the origin of the symptoms. Therefore, the work accident was a cause of this injury. Did you answer the question? Yeah. The claimant testified to a very specific mechanism of injury. Right. My question is, does that statement appear in any medical records that will corroborate that statement? Right there. It says mechanism of injury. He doesn't say what the mechanism of injury was. Dr. Schott didn't specifically outline exactly what was said to him. He just said it was based on the history and the mechanism of injury. What was that mechanism of injury? I think I have an answer. The quote that you read about the pathology doesn't appear specifically in any medical records. Is that a first statement? I thought it did. I thought it did in the physical therapy and... Follow her attention to it if it did. I'm not trying to paint you into a corner, but because the commission had problems with the credibility, and they went with the statements, I'm just trying to pin that down. The physical therapy records, I can't remember the page number, specifically said the pain was immediate. The incident report said that the initial pain was sharp. The history of Dr. Schott's record says it happened right away. So, did he use the word pain and pump? No. At least, it's not written down in the record, but you're relying upon a third party to write down everything someone says when they go to the doctor. When you go to the doctor, do you sit there and do a 10-minute recitation as to exactly what you did, or did you say, I hurt my knee at work, my knee popped? That's a fair characterization of what you're saying, I'll concede, but the point is that in this business, quote, unquote, we look to what the claimant says about the mechanism of injury at or near the time of it. Obviously, it's relevant what he says and doesn't say, correct? Yes, but I think what's more relevant, if I may, is the actual acts of the day. If this injury would have occurred at five minutes into the shift, I agree that this would be a problematic case, but this is after a 10-hour shift that he's up there manipulating with a torn meniscus. How could he have done that for 10 hours? That does not seem to me to be physically possible, to be up there manipulating with this severe, torn meniscus. How do we know it happened on that day? It couldn't have happened the day after because he came down and talked to Mr. Etcheson and said, I had pain and pop in my knee. It could have been the day after. He's not going to guess that the next day he's going to injure his knee. It's at the end of a shift, it's not at the beginning of a shift. In order for the commission to buy that this did not happen at work, you have to buy that it either happened the day before or the day after. It couldn't have been the day before because he was there for a 10-hour shift, working on top of a caterpillar, straddling and doing all this. It's a severe meniscus injury. It couldn't have happened afterwards, otherwise he would have to have guessed that he was going to injure his knee and told... And your explanation is that the fact that when he talked to the nurse, it was that severe and you keep emphasizing how severe it was, she writes down saying he didn't know how he hurt his knee. Now, I admit that you're going to say she made a mistake, but it's still in the evidence. I think, and maybe I have this written down wrong, but I think the statement is he made he didn't do anything to hurt it. He didn't do anything to hurt it. What does that mean? He didn't play baseball to hurt it or something? No, he didn't do anything to hurt it. If somebody asks you, the doctor says how did you hurt your knee, you're going to say I didn't do anything to hurt it. You have responses, you're going to call their attention to what caused your injury, what the incident was. Right, and he's put down the incident report, which was done, I think, before with the nurse and he also said it in the nurse's notes. That said, I was on top of the truck with a pain and when I felt the pain, a pop, slash, popped. The nurse's notes? I thought we were having a problem finding that in the nurse's notes. No, that is that quote. The narrative, there's a word that says narrative. It says 0512, notified by Michelle in 793 line, she was sending a patient for knee evaluation. 0524, right knee popped a couple times on Wednesday, I think that would be Wednesday, while at work but it didn't start hurting right away, period. States the pain was worse on Thursday and now having problems walking, period. States he was working on top of the truck when pain, slash, popped started. That's all in the same paragraph. States he was working on top of the truck when the pain, slash, popped started. Mr. Atterbury, did you already address the March 25th note by the physician's assistant where in the history she wrote, quote, secondary, the knee pain was secondary to an injury he sustained on March 9, 2011, while working. It goes on to state, quote, typically works climbing up and down onto the trucks and he said on March 9, 2011, while walking, he felt something pop in his knee, close quote. He denied that. He says that he, every medical worker says that it hurts while walking. But he's never, that is much later actually. He's already said this on the incident report, said it in this narrative I just mentioned, said it to Mr. Etcheson. We have all this other evidence saying exactly how he said it happened. He was up on the truck. He came down, told Mr. Etcheson, my knee just popped and I have pain. He was up on the, where was he at before? Up on the truck. What type of activities was he doing? Squatting and twisting. That's the activity you do up on that truck is squatting and twisting. And that's... Was there a physician's assistant that opposed? No. Was there any evidence, well, was there any evidence established at the arbitration that this is an Just the doctor saying you can't do it this way? No, the physician's assistant, excuse me, the physician's assistant taking down the history that claimant typically works climbing up and down onto the trucks and he said on March 9, 2011, while walking, he felt something pop in his knee. Was there any evidence established that that quote is inaccurate? Just my client's testimony. So basically what you have is you have some third party taking some notes that what we're saying is taken out of context because even in that one paragraph, that narrative paragraph, it goes from popped a couple times while at work, it didn't start hurting right away to just two lines down says states he was working on top of a And then in the next page in the record shows did nothing to hurt it. That's just, you're relying on a third party taking down notes and that accuracy. She didn't come in and testify as to why she said hurt or whatever. But you're relying on notes of a third party. She wasn't present for the incident. I know, but you know that that's inconsistent with what the claimant's testimony is going to be at arbitration. Isn't it incumbent then on the claimant to try to head that off at the pass, establish via some sort of evidence, maybe deposing the physician's assistant that I might have been in error when I wrote down that history or I put quotes around it, but I'm not sure that that was accurate. All the arbitrator has is this medical record that contains a quote and that quoted history is completely contrary to the claimant's testimony about how that injury occurred. But the petitioner's testimony is consistent with the activities of the day. The doctor's notes that are randomly put are not consistent with what he had done that day on that job. John Etchison is unrebutted. He said that he could see from where he's at that Mr. Durbin was up there twisting and squatting. He came down at the end of the shift with knee pain. Your red light's on. Thank you, Your Honor. Very briefly, first of all in response to a question by the panel, the first recorded history of any twisting and squatting was July 6, 2011 in a therapy note at Taylor Medical. Didn't appear anywhere else between the time of the alleged accident? No, Your Honor. Secondly, this is something obviously, and the panel can tell from my briefs, I've been fighting about for some time with respect to the force, if you will, or the purpose of a third-party medical record. As pointed out, these medical records were unrebutted. Petitioner has the burden of proof. Petitioner has the opportunity to take a deposition, to do whatever needs to be done to try to bring those accounts into question. Did not do so. Thirdly, with respect to Mr. Etchison, leaving aside questions of credibility for the moment, the statement that he was ultimately allowed to testify to was equivocal. He talked about the petitioner stating ultimately that his knee popped. And as pointed out by Dr. Kornblad, if you've got a bucket-handled meniscus tear in your knee, it flaps into and out of the joint. And it will pop as it's flapping into and out of the joint, which provides, even assuming for the moment that you give that statement credibility, an alternative answer. And justifiable explanation for the Commission to rely on as to why it is that that would be so. So again, we'd submit that the sum total of the evidence here is consistent with the Commission's decision that it is not against the manifest way of the evidence, and that the Commission's original decision should be reinstated. Thank you. The Court will stand by.